**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Michael Huertas, Administrator of the | : | TRIAL BY JURY DEMAND |
| Estate of Gabriel Diaz | : | CIVIL ACTION NO. |
| 8657 NE 150th Ave | : | |
| Williston, FL 32696 | : | |
|       Plaintiff. | : | |
| | : | |
|       v. | : | |
| | : | |
| Borough of East Greenville | : | |
| 206 Main Street | : | |
| East Greenville, PA 18041 | : | |
| | : | |
| PO Matthew Oliver | : | |
| 206 Main Street | : | |
| East Greenville, PA 18041 | : | |
| | : | |
| PO Micheal Altomare | : | |
| 206 Main Street | : | |
| East Greenville, PA 18041 | : | |
| | : | |
| PO Patrick Francis | : | |
| 206 Main Street | : | |
| East Greenville, PA 18041 | : | |
| | : | |
| PO Randy Morris | : | |
| 206 Main Street | : | |
| East Greenville, PA 18041 | : | |
| | : | |
| Mayor Steve Wescott | : | |
| 206 Main Street | : | |
| East Greenville, PA 18041 | : | |
| | : | |
| & | : | |
| | : | |
| Trooper Corporal Caleb Diaz | : | |
| 2071a Cressman Rd, | : | |
| Schwenksville, PA 19473 | : | |
|       Defendants. | : | |

1

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

## CIVIL ACTION

## COMPLAINT

Plaintiff by and through his attorney Brian J. Zeiger, Esquire, hereby alleges the following:

## JURISDICTION & VENUE

1. Plaintiff alleges civil rights violations under 42 U.S.C. § 1983 and this Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

2. Defendants reside in the Eastern District of Pennsylvania and venue is proper pursuant to 28 U.S.C. § 1391(b).

## PARTIES

3. At all times relevant hereto the Plaintiff Michael Huertas is the administrator of the estate of Gabriel Diaz, is an adult resident of Florida who lives at 8657 NE 150th Ave, Williston, FL 32696.

4. Defendant Borough of East Greenville, which is a municipality in Montgomery County, PA, conducting business at 206 Main Street, East Greenville, PA 18041.

5. Defendants Oliver, Altomare, and Francis are believed to be adult citizens of Pennsylvania conducting business at 206 Main Street, East Greenville, PA 18041.The Defendants are believed to be police officers and are being sued in their individual capacity, hereinafter referred to as the "individual defendants".

6. Defendant Corporal Caleb Diaz is believed to be an adult citizen of Pennsylvania conducting business at 2071a Cressman Rd, Schwenksville, PA 19473. The Defendant is believed to be a Pennsylvania State Trooper with the rank of Corporal and is being sued in his individual capacity, hereinafter referred to and included as the "individual defendants".

2

7. Defendant Randy Morris is believed to be the Chief of Police of the East Greenville Police Department, conducting business at 206 Main Street, East Greenville, PA 18041. The Defendant is believed to be a police officer and a supervisor; he is being sued in both his individual capacity and his supervisory capacity, hereinafter referred to as the "Defendant Chief Morris."

8. Defendant Steve Wescott is believed to be the Mayor of East Greenville, PA. Defendant Wescott is being sued only in his official capacity as a supervisor and decision maker for the East Greenville Police Department, hereinafter referred to as, "Defendant Mayor Wescott."

9. At all times material hereto, the defendant law enforcement officers acted under color of law and within the course and scope of their employment, pursuant to the customs, policies, practices, ordinances, regulations, and directives of the of the Municipal Defendant.

## FACTUAL BACKGROUND

10. On or about September 14, 2024, at or about 20:00 hours, Plaintiff's decedent was lawfully present at or near 112 Cherry Street, East Greenville, Montogomery County, Pennsylvania.

11. At that time Defendant Matthew Oliver responded to a complaint of domestic violence between Plaintiff's decedent and Plaintiff's decedent's daughter, Angelina Diaz.

12. At that time, Defendant Oliver was accompanied my Defendant Michael Altomare.

13. Defendants Oliver and Altomare met with Angelina Diaz, where she told them that Plaintiff's decedent was off his mental health medication, he was having a manic episode,

3

he attacked her with his cane, and he did not own any firearms, but did possess various bladed weapons.

14. Defendants Oliver and Altomare did not observe the decedent commit any crimes.

15. Defendants Oliver and Altomare did not call for mental health help for Plaintiff's decedent; i.e. they did not try to 302 him under Pennsylvania's Mental Health Procedures Act, to have him involuntarily committed for a 120-hour psychiatric hold.

16. Sometime shortly thereafter, Defendant Patrick Francis appeared on the scene.

17. Defendant Francis made the decision to unlawfully enter the decedent's house without a warrant to arrest the decedent; further, no exception to the warrant requirement applied at that time and place.

18. The decedent asked the Defendants to leave his house.

19. The Defendants refused to leave the decedent's house.

20. Defendants Altomore, Francis and Oliver knew that no other citizens were inside the home with the decedent.

21. Defendant Altomare called for backup.

22. As a result of Defendant Altomare's call for back up, over 10 officers, PA state troopers and various EMS personnel, arrived on the scene.

23. Further, Defendant Oliver contacted Defendant East Greenville police, including Defendant Chief Morris, to alert supervisors as to the situation with the decedent.

24. Defendants Francis and Altomare positioned themselves at the front entrance of the living room.

25. At this time the decedent had a bladed weapon in his hands; based upon information and belief, Trooper Zambelli believed the weapon to be a machete.

4

26. The decedent retreated to the basement and locked the door from the living room to the basement.

27. At approximately 21:30 hours, East Greenville Police Chief, Defendant Chief Morris arrived on the scene and determined that a tactical team was necessary to diffuse the situation.

28. Defendant Chief Morris contacted Montgomery County central command and requested a tactical team be sent to the scene.

29. Based upon information and belief, the Montgomery County tactical team did not appear at the scene because Defendant East Greenville did not pay for crisis response team.

30. At approximately 22:01 hours, Defendants Chief Morris and Oliver were contacted by Defendant Corporal Diaz, who is a Pennsylvania State Trooper, regarding the Special Emergency Response Team (hereinafter "SERT") team coming to the scene to assist the officer.

31. Defendant Corporal Diaz arrived at the scene.

32. Later, Defendant Corporal Diaz learned that the SERT team would not be assisting.

33. Law enforcement on the scene decided to breach the home even though they had no formal crisis response training, no mental health emergency training, no warrant to enter the home, and no exigent circumstances to meet the warrant exception for entering a home.

34. The breach team was separated into two groups. The living room officers were Defendants Oliver, Altomare, Francis, and Morris. The rear basement officers were troopers Mascio, Defendant Diaz, Washington and Rodriquez.

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

35. The rear officers could not enter the house due to extensive locks on the doors in the rear of the property.

36. However, the living room team was able to gain access to the property.

37. The decedent had some type of bladed weapon in his hands and refused to comply with commands.

38. The decedent was arguing with Defendants Oliver and Francis and not following verbal commands.

39. At this time, Defendant Diaz was able to make rear entry into the property.

40. Sometime shortly thereafter, Defendant Diaz tased the decedent.

41. After the tasing, Defendant Diaz screamed, "GO!"

42. As a result of hearing the signal from Defendant Diaz, Defendants Oliver, Altomare, and Francis entered the stairwell from the living room to the basement.

43. Defendant Francis entered the stairwell first, equipped with a ballistic shield and his duty weapon; followed behind by Defendant Diaz and Trooper Mascio.

44. The decedent began to charge at Defendant Francis.

45. Based upon information and belief, Defendant Francis believed the decent possessed a bladed weapon while he was charging at him.

46. The decedent and Defendant Francis collided, and Defendant Francis shot and killed the decedent.

47. The individual Defendants should have called for a mental health team to diffuse the situation, i.e. they could have avoided killing the decedent.

6

48. Alternatively, based upon information and belief, the individual defendants were equipped with tasers, and therefore could have used less lethal force in their attempt to detain the decedent.

49. Based upon information and belief, Defendants East Greenville, Chief Morris, and Mayor Wescott did not have a crisis response plan, policy, or custom in place on September 14, 2024.

50. Further, if Defendants East Greenville, Chief Morris, and Mayor Wescott, had a crisis response plan, policy or custom in place, the decedent would still be alive.

51. Plaintiff's decedent was suffering from a severe mental health episode and was not given proper mental health crisis treatment due to the lack of policy or custom by Defendants East Greenville, Chief Morris, and Mayor Wescott.

52. Further, based upon information and belief, Defendants East Greenville, Chief Morris, and Mayor Wescott either did not properly retain the Montgomery County Crisis Response Team, or failed to pay their bill to the Montgomery County Crisis Response Team.

53. Further, based upon information and belief, Defendants East Greenville, Chief Morris and Mayor Wescott failed to properly implement procedures and policies to properly contact the Pennsylvania State Police's SERT team in the time of a mental health crisis.

54. Defendants East Greenville, Chief Morris and Mayor Wescott did not adequately train and/or supervise Defendants Oliver, Francis and Altomare when dealing with a mental health crisis in East Greenville.

55.   The failure to implement policies and procedures and the failure to supervise were the direct cause of the injuries suffered by the Plaintiff in this case. The individual Defendants Defendant knew they could use excessive force without consequence. Rather than change

7

policy, practice, or pattern of practice or custom stemming from the widespread use of excessive force, Defendants East Greenville, Chief Morris and Mayor Wescott continued with the normal course of excessive force against their citizens.

56.   Despite full knowledge of the lack of crisis response policy, training, and supervision, of officers in a mental health crisis situation, by East Greenville Police, especially involving citizens in mental health crisis, Defendants East Greenville, Chief Morris and Mayor Wescott failed to address defective use of excessive force and arrest practices in execution of 302 situations.

## <u>COUNT I - EXCESSIVE FORCE - 42 U.S.C. § 1983</u><br><u>INDIVIDUAL DEFENDANTS</u>

57. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

58. Plaintiff believes and therefore avers that the force used upon him was unnecessary and more force than was reasonable and necessary under the circumstances.

59. Plaintiff believes and therefore avers that Defendants, acting in concert and conspiracy with each other, have by the aforementioned actions, deprived Plaintiff of his constitutional and statutory rights.

60. Defendants' actions were a factual cause of and/or caused Plaintiff's substantial damages and harm. (See above).

   **WHEREFORE**, Plaintiff demands judgment against Defendants for such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Hundred

8

Fifty Thousand ($150,000.00) Dollars together with delay damages, interest, costs and attorneys' fees and punitive damages.

## COUNT II - UNCONSTITUTIONAL SEIZURE OF PERSON
## UNDER 42 U.S.C. § 1983
## ALL INDIVIDUAL DEFENDANTS

61. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

62. Plaintiff did not commit any criminal offense related to the above incident.

63. Defendant did not have any probable cause to believe the Plaintiff committed any criminal offense.

64. No reasonable police officer would believe probable cause existed to arrest the Plaintiff.

65. The Defendant intentionally, maliciously, and falsely entered the decedent's home with reckless disregard for Plaintiff's decedent's constitutional rights; i.e. the warrantless entry.

66. The illegal seizure of the Plaintiff's decedent was a violation of his Fourth Amendment rights under the United States Constitution.

67. Defendants acted in concert and conspiracy with each other to deprive the Plaintiff's decedent of his liberty.

68. As a direct result of Defendants' intentional and malicious conduct, Plaintiff's decedent was seized suffered associated deprivations of liberty.

69. As a direct and proximate result of the Defendants' actions, Plaintiff's decedent suffered serious mental anguish, psychological and emotional distress, fear, anxiety, embarrassment, and the loss of the enjoyment of life.

9

70. As a direct and proximate result of the aforementioned acts and conduct of the

defendants, Plaintiff has incurred other financial expenses to which she may otherwise be

entitled to recover.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages against

Defendants for such sums as would reasonably and properly compensate him for injuries in an

amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay

damages, interest, costs, attorneys' fees, punitive damages, and declaratory and injunctive relief.

## COUNT III -
## CONSPIRACY UNDER 42 U.S.C. § 1983

71. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this

Complaint and incorporates them herein by reference as if the same were set forth at

length.

72. The Defendants in this matter conspired to deprive the Plaintiff of his constitutional

rights.

73. The Defendants took overt steps in furtherance of the conspiracy to shoot and kill,

illegally enter the decedent's home, and illegally seized the decedent. .

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages against

Defendants for such sums as would reasonably and properly compensate him for injuries in an

amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay

damages, interest, costs, attorneys' fees, punitive damages, and declaratory and injunctive relief.

## COUNT IV –
## MONELL CLAIM UNDER 42 U.S.C. § 1983
## DEFENDANT BOROUGH OF EAST GREENVILLE

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

74. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

75. Defendant Borough of East Greenville, through its police department, established, knew of, and acquiesced to policies, procedures, and customs that Defendants knew or should have known would lead to violations of citizens' constitutional rights.

76. The decision makers of the Defendant Borough of East Greenville, who made, enforced, or turned a blind eye, to the defective policies, procedures, and customs, including but not limited to the head of the police force, the mayor, and the individual defendants' direct supervisors on the night in question.

77. Defendant Borough of East Greenville, through its police department, acted with deliberate indifference to the consequences when establishing and enforcing inadequate policies, procedures, and customs.

78. Defendant Borough of East Greenville, through its police department, did not properly establish a policy regarding peaceful citizens struggling with mental health issues.

79. Defendant Borough of East Greenville, through its police department, did not properly establish a policy regarding use of force in 302 situations.

80. Defendant Borough of East Greenville, through its police department, did not properly establish a policy regarding if and when a police officer can use force in a 302 situation.

81. Defendant Borough of East Greenville, through its police department, did not properly retain the Montgomery County crisis response team either because they did not pay the bill, or were too cheap to retain the service offered from the county, which prevented

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

citizens from being safe during mental crises.

82. Defendant Borough of East Greenville, through its police department, did not properly train its police force to properly activate, employ, and save video footage from the on scene interactions with citizens.

83. Defendant Borough of East Greenville, through its police department, did not properly train and supervise its police officers not to enter properties without warrants regarding citizens in need of mental health treatment to cover up their covert illegal actions, i.e., excessive force.

84. The Plaintiff believes and therefore avers the Defendant Borough of East Greenville, has adopted and maintained for many years, a recognized and accepted policy, custom and/or practice of systematically failing to properly train, investigate, supervise and discipline its employees, including the individual Defendants, regarding individuals' rights when being 302'd and needing help from law enforcement.

85. Defendant Borough of East Greenville, knew or should have known that its employees engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Plaintiff, and that they deliberately, knowingly and intentionally failed to take measures to stop or limit the policy, custom and practice and therefore acquiesced in, and were deliberately indifferent to, the aforementioned unconstitutional conduct and policy.

86. By failing to take action to stop or limit the policy and/or custom and/or practice by remaining deliberately indifferent to the systematic abuse which occurred in accordance with and as a direct and proximate result of the policy, Defendant Borough of East Greenville condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Fourth Amendment to the Constitution of the United

12

States, the laws of the United States and of the Commonwealth of Pennsylvania.

87. The conduct of Defendant Borough of East Greenville and/or the conduct of defendants'
employees or agents, and/or policy maker for the Defendant Borough of East Greenville,
were a factual cause of and/or the cause of the harm and damages sustained by Plaintiff.

WHEREFORE, Plaintiff demands judgment for compensatory damages against Defendants for
such sums as would reasonably and properly compensate him for injuries in an amount in excess
of One Hundred Fifty Thousand ($150,000.00) Dollars together with delay damages, interest,
costs, attorneys' fees, and declaratory and injunctive relief. Plaintiff is not seeking punitive
damages against the municipality.

**COUNT V**
**VIOLATION OF CIVIL RIGHTS-42 U.S.C. § 1983-SUPERVISORY LIABILITY**
**PLAINTIFF V. DEFENDANTS CHIEF MORRIS AND MAYOR WESCOTT**

88. Plaintiff incorporates the preceding paragraphs above as though fully set forth herein at
length.

89. Defendants Chief Morris and Mayor Wescott, failed to have an adequate policy in place
governing police pursuits for their officers; failed to properly train their troopers in the
conduct of such pursuits; and they failed to properly supervise Defendants Trooper
Bringle, Trooper Amarose, Trooper Hoffee, Trooper Hull, Corporal Hofacker, before and
during the aforementioned pursuit, thereby violating decedent's rights under the laws of
the Constitution of the United States of America, in particular, the Fourteenth Amendment,
their rights under 42 U.S.C. §1983.

90. Defendants Chief Morris and Mayor Wescott negligently and unnecessarily with
deliberate indifference created a dangerous situation, thereby directly causing serious
injury and death to the decedent, which is a violation of his rights under the law and the

13

Constitution of United States of American and in particular, the due process clause of the Fourteenth Amendment and their rights under 42 U.C.S. §1983.

91. As a direct and proximate result of the aforesaid acts and omissions of Defendants Chief Morris and Mayor Wescott, which were committed under color of his authority for the Commonwealth of Pennsylvania, the decedent suffered grievous bodily injury and death which is a violation by said Defendant of the laws and the Constitution of the United States of America, in particular, the Fourteen Amendment to the United States Constitution and 42 U.S.C. §1983, which makes said Defendant liable to the Plaintiff.

92. The acts committed by Defendants Chief Morris and Mayor Wescott, with deliberate indifference and constituting a state created danger caused the previously described injuries to the decedent in violation of his constitutional rights as previously set forth in the aforementioned paragraphs.

93. Defendants Chief Morris and Mayor Wescott, in their supervisory capacity over Defendants Oliver, Francis and Altomare, as set forth above and based upon his knowledge of the complete lack of policy, training and custom for crisis and mental health situations, in violation of the decedent's rights.

94. Defendants Chief Morris and Mayor Wescott, in their roles as policymakers for the East Greenville Police, with deliberate indifference to the consequences, established, implemented and maintained a policy or custom of inadequate training and therefore caused Defendants Oliver, Francis and Altomare to conduct an unsafe home invasion in a manner which deprived the decedent of life and liberty, which directly caused the constitutional harm to the decedent.

WHEREFORE, Plaintiff demands judgment for compensatory damages against Defendants for

14

such sums as would reasonably and properly compensate him for injuries in an amount in excess of One Million ($1,000,000.00) Dollars together with delay damages, interest, costs, attorneys' fees, and declaratory and injunctive relief.

<u>**COUNT VI:**</u>
<u>**WRONGFUL DEATH (PENNSYLVANIA LAW)**</u>
<u>**PLAINTIFF V. DEFENDANTS**</u>

95. Plaintiff alleges each and every allegation contained in the foregoing paragraphs of this Complaint and incorporates them herein by reference as if the same were set forth at length.

96. Plaintiff brings the action on behalf of the beneficiaries under and by virtue of the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and the Applicable Rules of Civil Procedure.

97. The decedent is survived by beneficiaries under the Wrongful Death Act.

98. As a result of the conduct of Defendants, as set forth herein, the deceased was caused grave injuries and death, resulting in the entitlement to damages by the beneficiaries under the Wrongful Death Act.

99. Plaintiff claims all expenses recoverable under the Wrongful Death Act, including but not limited to damages for medical, funeral, and burial expenses and expenses of administration necessitated by reason of the injuries causing the decedent's death.

100.    On behalf of the Wrongful Death Act beneficiaries, the Administrator claims damages for services provided that could have been expected to have been performed in the future.

101.    On behalf of the Wrongful Death Act Beneficiaries, the Administrator claims

LEVIN & ZEIGER LLP
1500 JFK BLVD, SUITE 620
PHILADELPHIA, PENNSYLVANIA 191029
215.546.0340

damages for all pecuniary loss suffered by the beneficiaries.

102.    On behalf of the Wrongful Death Act beneficiaries, the Administrator claims

damages for all loss of comfort, society, guidance, and tutelage that the beneficiaries may

have received from the decedent by the beneficiaries as a result of decedent's untimely

death.

103.    On behalf of the Wrongful Death beneficiaries, the Administrator claims damages

for the full measure of damages, including punitive damages, allowed under the Wrongful

Death Act of Pennsylvania and the decisional law interpreting said Act.

    WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty

thousand dollars ($150,000) in compensatory damages, punitive damages, delay damages,

interest, attorneys fees and allowable costs of suit and brings this action to recover same.

## COUNT VII:
## SURVIVAL ACTION (PENNSYLVANIA LAW) –
## PLAINTIFF V. DEFENDANTS

104.    Plaintiff alleges each and every allegation contained in the foregoing paragraphs

of this Complaint and incorporates them herein by reference as if the same were set forth at

length.

105.    Plaintiff brings this Survival Action under and by virtue of 42 Pa.C.S. §8302, and

the applicable Rules of Civil Procedure and the decisional law interpreting the Act.

106.    As a result of the negligence of all Defendants set forth herein, the decedent was

caused grave injuries and death, resulting in the entitlement to damages by her Estate under

the Survival Act.

107.    As a result of the decedent's death, the Estate has been deprived of the economic

16

value of his life expectancy, and Plaintiff claims under the Survival Act damages for all pecuniary losses suffered by the Estate as a result of her decedent's death, including all loss of income, earnings, retirement income, benefits and Social Security income.

108.     The Administrator further claims, under the Survival Act, the total amount that the decedent would have earned in the future, minus the costs of personal maintenance.

109.     The Administrator further claims, under the Survival Act, damages for the conscious pain and suffering endured by decedent prior to death, including physical pain and suffering and mental pain and suffering leading to decedent's death.

110.     The Administrator further claims, under the Survival Act, all damages, including punitive damages, recoverable pursuant to 42 Pa.C.S. § 8302 and the decisional law interpreting said Act.

WHEREFORE, Plaintiff claims of Defendants a sum in excess of one hundred and fifty thousand dollars ($150,000) in compensatory damages, punitive damages, delay damages, interest, attorneys fees and allowable costs of suit and brings this action to recover same.

Respectfully submitted,

/s Brian J. Zeiger
BRIAN J. ZEIGER, ESQUIRE
Identification No.: 87063

LEVIN & ZEIGER, LLP
1500 JFK Blvd, Suite 620
Philadelphia, Pennsylvania 19102
215.546.0340

17